## LEIGH *v.* TRIPPE.

### Opinion delivered June 21, 1909.

1. TAXATION—RECORD OF DELINQUENT SALES—SUFFICIENCY.—The requirement in Kirby's Digest, § 7092, that the county clerk shall keep a record of lands sold for taxes to individuals separate from the record of lands sold to the State is directory merely, and a sale of lands to the State for nonpayment of taxes is not rendered invalid by noncompliance with such requirement. (Page 118.)

2. SAME—CLERK'S CERTIFICATE—FORM OF.—Under Kirby's Digest, § 7086, requiring the county clerk to record the delinquent list and notice of sale of lands in a book to be kept for that purpose "stating in what newspaper said list was published, and the date of publication, and for what length of time the same was published," etc., a certificate is sufficient which follows the language of the statute. (Page 121.)

Appeal from Desha Chancery Court; *Zachariah T. Wood,* Chancellor; reversed.

*Baldy Vinson,* for appellants.

1. A failure to keep *separate* records as required by statute is not fatal to the tax sale. Kirby's Digest, §§ 7092, 7107; 61 Ark. 39; 70 Ark. 328; 61 Ark. 414; 72 Ark. 375; 76 Ark. 450; 49 Ark. 275. The provisions are not mandatory. The clerk kept the record required by law.

*J. Bernhardt,* for appellees.

2. The provisions of § 7092, Kirby's Digest, are mandatory. 61 Ark. 414; 70 Ark. 328; 61 Ark. 36; etc.

3. No such record was kept.

4. The delinquent list was not legally advertised. 70 Ark. 327. The record alone can be looked to as evidence. 55 Ark. 218.

McCulloch, C. J. This is an action, instituted by the appellees in the chancery court of Desha County against appellants to quiet title to a tract of land claimed by them as heirs at law of William F. Trippe, deceased, who owned it. The land was wild and unoccupied, and appellants claim title under a forfeiture to the State for non-payment of taxes. It was forfeited for the taxes of the year 1897, and appellants purchased it from the State in 1904. The appellees tendered to appellants the amount of the taxes, penalty and costs, with interest, for which the land was sold, together with all taxes which would have become due for subsequent years if the lands had remained on the tax books. The court rendered a decree in accordance with the prayer of the complaint, canceling the tax forfeiture and subsequent deed to appellants.

The principal attack on the validity of the forfeiture is grounded on the fact that the clerk failed to keep a separate record, as required by law, of the lands forfeited to the State, and the chancellor based the decree declaring the forfeiture to be void on that alleged defect in the record. The clerk made a single record, duly certified, of all the lands sold that year, both to individuals and to the State, but did not make a separate record of the sales to the State.

The statute prescribing the duties of the clerk in this regard is as follows:

"The clerk of the county court shall attend all such sales of delinquent lands and lots, town or city lots, or parts thereof, made by the collector of the county, and shall make a record thereof in a substantial book, therein describing the several tracts of land, town or city lots, or parts thereof, as the same shall be described in the advertisement aforesaid, stating what part of each tract of land, town or city lot was sold, and the amount of taxes, penalty and costs due thereon, and to whom sold; and he shall record in a separate book, to be kept for that purpose,

each tract of land, town or city lot sold to the State, together with the taxes, penalty and costs due thereon. Immediately after such sale the clerk of the county court shall make out and certify to the auditor of State a copy of each of said sale lists as recorded in said book, together with an abstract thereof showing the total valuation of the property contained in each, and the total amount of the taxes, penalty and costs thereon in each." Kirby's Digest, § 7092.

The statute, literally construed, contemplates that the clerk shall keep two separate records of the lists of lands sold to individuals and the State, describing the several tracts sold and stating the amount of taxes, penalty and costs due thereon and to whom sold. It obviously does not mean that the first mentioned record must contain a list of the lands sold to the State, for it requires that the record shall state "what part of each tract of land, town or city lot was sold," and there is no provision in the statute for less than the whole of the tract or lot assessed to be bid off in the name of the State. If no person offers the full amount of the taxes, penalty and cost due thereon, the whole of it is bid off in the name of the State. Sec. 7087, Kirby's Digest. It cannot be said that the statute, when literally construed, requires that the list of lands sold to the State must be recorded in a separate book, for the statute is contradictory in that respect. It does say that the clerk shall "record in a separate book" the list of lands sold to the State; but the concluding paragraph of the section provides that he shall certify to the auditor "a copy of each of said lists as recorded in said book," showing that both lists are recorded in the same book, but separately. This shows that the framers of the statute did not intend to provide with accuracy of detail the particular method in which the record should be kept, but that the end to be attained was that a permanent record should be kept from which the owner of the land could ascertain the amount of taxes, penalty and costs for which his land was sold. *Cooper* v. *Freeman,* 61 Ark. 36; *Salinger* v. *Gunn, Id.* 414; *Quertermous* v. *Walls,* 70 Ark. 326.

The question then arises, whether or not the failure to keep separate records of the two lists of sales—those to individuals and those to the State—invalidates the sale when both are kept and certified together. There is no reason to believe that the

provision for keeping the two lists separate was intended to be mandatory, and no reason to so treat it. That is merely a matter of detail, and the keeping of the lists separate affords no protection to the owner. If he searches the record at all for the sale of his land at tax sale, he finds it in the list. He is chargeable with notice of the contents of that list, it affords all the information that would be obtained from a separate list, and he is not misled by the absence of, or failure to keep, such lists. How then is he prejudiced by the failure to separate the two lists? It is the declared policy of our revenue laws to disregard technical irregularities in tax sales which are not prejudicial to the rights of the owner, and to require all proceedings to set aside sales on account of such irregularities to be instituted during the period allowed for redemption. Kirby's Digest, § 7114.

This court upheld that statute, but restricted its operation to mere irregularities which are non-prejudicial to the rights of the owner. In *Radcliffe* v. *Scruggs,* 46 Ark. 96, Judge SMITH, speaking for the court, said: "Our legislation and previous decisions have always distinguished between this class of defects, which have no tendency to injuriously affect the taxpayer, and substantial defects, such as go to the jurisdiction of the levying court to levy a particular tax, or to the power of the officer to sell for nonpayment, or the omission of any legal duty which is calculated to prejudice the land owner."

Search will be in vain for a decision of this court holding a mere irregularity in tax proceedings, which is not jurisdictional and which does not affect nor prejudice any right of the land owner, sufficient to invalidate a tax sale. In all cases where tax sales have been held invalid on account of failure to strictly observe some requirement of the statute, either a defect of jurisdiction is found to have arisen by reason of the omission or a possible prejudicial effect is found in the omission of some safeguard which the statute has provided.

It is contended that *Quertermous* v. *Walls* is decisive of the question, but we do not find it so. In that case the recital of facts in the opinion, which follows closely the lines of the record in that respect, shows an admission in the answer to the effect "that there was no separate book wherein a record of the said tax sales was entered." This can only be understood to mean that

ARK.] LEIGH *v.* TRIPPE.

no record of the tax sales was kept. The opinion first holds the sale to be void on other grounds stated therein, and then lays down the law broadly that the requirement of the statute for a record of sales to be kept by the clerk is mandatory, and that his failure to comply with the statute avoids the sale. It is not therein held that all the requirements as to the details are mandatory. The mandatory feature of the statute is described in the following language: "It was intended that the record of the sale actually made should be preserved in permanent form for the protection of the land owner. He can rely upon this record to determine whether his land has been sold, and whether it was legally sold for the proper amount of taxes, penalty and costs charged against it." The language of the opinion must of course be limited in its application to the particular facts of that case, as nothing else was before the court for its decision.

A further attack is made on the validity of the tax sale on the ground that the clerk, in his certificate to the record of the delinquent list, failed to state that the newspaper in which the list was published had a *bona fide* circulation in the county for a period of thirty days before the date of publication. The statute then in force regulating the publication of legal advertisements did not require that the newspaper should have a circulation for any definite length of time before publication. Sand. & H. Dig., § 4684. But, aside from this, it is sufficient to say that the section of the statute prescribing the duties of the clerk in making his certificate does not require that the circulation of the newspaper, or the fact that it had a *bona fide* circulation, should be stated in the certificate. All that the statute requires is that the clerk "shall certify at the foot of said record, stating in what newspaper said list was published, and the date of publication, and for what length of time the same was published before the second Monday in June then next ensuing." Kirby's Dig., § 7086. The certificate of the clerk is sufficient if it follows the language of the statute.

The chancellor erred in annulling the tax sale. Therefore the decree is reversed, and the cause remanded with directions to dismiss the complaint for want of equity.

WOOD, J., dissented.