COULTER v. ANTHONY.

5-1245                                         308 S. W. 2d 445

Opinion delivered November 4, 1957.
[Rehearing denied and supplemental opinion filed January 20, 1958.]

*Gentry & Gentry,* for appellant.

*J. R. Wilson, W. C. Medley, L. B. Smead* and *L. Weems Trussell,* for appellee.

GEORGE ROSE SMITH, J. This is a suit by the two appellants, Murray Whitfield Coulter and George Prothro Coulter, to cancel the appellees' tax titles to several hundred acres of unimproved land in Calhoun county. The chancellor, without reaching the question of whether the tax titles are valid, held that the appellants are not the real parties in interest and dismissed the complaint for that reason.

The plaintiffs assert that the lands were formerly owned by Harris Brothers, a partnership which was adjudicated a bankrupt on January 23, 1932. On June 13 of that year, while the bankruptcy proceedings were still pending, the land was sold to the state for nonpayment of the 1931 taxes. The state's title was subsequently acquired by the appellees and is the basis for their claim of ownership.

The appellants derive their asserted title from the Harris Brothers bankruptcy proceedings. On August 16, 1933, the trustee in bankruptcy was authorized to sell the land to E. W. Prothro, by private sale, and the trustee's deed to Prothro was executed on the following day. The trustee's attorney in the bankruptcy proceedings was the appellants' father, E. H. Coulter. It is contended by the appellees that the elder Coulter was the real purchaser at the bankruptcy sale and that the deed to his brother-in-law, Prothro, was a subterfuge. Eleven days after the sale Prothro conveyed the land to his two nephews, the appellants, who were then one and three years old respectively. When the present suit was brought one of the plaintiffs was twenty-one and ther other nineteen.

It is conceded by the appellants that they have no statutory right to redeem the land from the tax sale, for the period of redemption had already begun to run when they acquired their title and was not extended by reason of their minority. *Tarrence* v.

*Berg,* 202 Ark. 452, 150 S. W. 2d 753. If the appellants are to prevail they must show that the 1932 tax sale was void. Since this issue controls almost the whole case we consider it first.

Four defects are relied upon by the appellants to support their assertion that the tax sale was void. First, **we are urged to declare the sale void** because it was conducted without the consent of the bankruptcy court. Representative authorities cited by the appellants on this point include *Dayton* v. *Stanard,* 241 U. S. 588, 60 L. Ed. 1190, 36 S. Ct. 695, *In re Eppstein,* 8th Cir., 156 Fed. 42, and Remington on Bankruptcy (5th Ed.), § 2359.

We do not conceive the rule to be as far-reaching as the appellants would have it. Doubtless the bankruptcy court could have set aside the tax sale had it chosen to do so, but this merely demonstrates that the sale was voidable, not that it was void. There was no federal statute prohibiting the sale or requiring the tax collector to obtain permission to sell the property. The principle is instead a rule of judicial decision and is derived from the power of the court to protect property in its custody. It seems clear that some affirmative action on the court's part is needed if the sale is to be avoided. In the *Dayton* case the bankruptcy court took that action by the entry of an order canceling the certificates of purchase and requiring the purchasers to assert claims against the assets of the bankrupt. A somewhat similar course was followed in the *Eppstein* case. We are not aware of any decision holding that the mere failure of the taxing authorities to obtain permission for the sale renders the **tax forfeiture absolutely void** and open to collateral attack.

In the Harris Brothers matter the bankruptcy court made no effort to set aside the collector's sale. To the contrary, the order authorizing the trustee's sale to Prothro expressly made it subject to the delinquent taxes against the land. It is quite apparent that the tax sale did not interfere in any way with the bankruptcy court's control of the property. It would be

carrying the rule beyond its reason to say that the absence of prior judicial consent rendered this sale void.

Second, the certificate showing the publication of the notice of sale was not executed by the county clerk until the day of sale, when it should have been executed before that day. In the absence of a curative act this defect renders the sale void. *Cecil* v. *Tisher*, 206 Ark. 962, 178 S. W. 2d 655. One of the tracts involved, being a part of the fractional southwest quarter of section 31, township 11 south, range 13 west, was sold by the state after the repeal of Act 142 of 1935 and is not subject to the operation of any curative act. As to this tract the appellants are correct in their contention that the tax sale was void.

All the rest of the land was conveyed by the state during the two years that Act 142 of 1935 was in force, and hence the appellees are entitled to the curative benefits of that act. *Wood* v. *Lovett*, 313 U. S. 362, 85 L. Ed. 1404, 61 S. Ct. 983. As to these tracts the question is whether the clerk's belated execution of the certificate was an irregularity cured by Act 142 or a jurisdictional matter lying beyond the remedial power of the legislature.

Our prior decisions indicate pretty clearly that the defect was a mere irregularity. Act 142 was first construed in the leading case of *Carle* v. *Gehl*, 193 Ark. 1061, 104 S. W. 2d 445. There we held that various matters such as the publication of the notice of sale are jurisdictional essentials, that the clerk's records are the only legal sources of information about these matters, and that consequently a complete failure to make the required record is a jurisdictional defect not cured by Act 142. But with respect to the officer's mere failure to act at the right time, as opposed to his total omission to act, we said: "Beyond question it is within the power of the Legislature to provide for the rules by which the foregoing exercise of power may be made *both as to time and form*, and, having the power in the first place to make such rules, indubitably the Leg-

islature has the power to alter or dispense with the same.'' (Italics supplied.)

The exact point now presented was decided in *Wallace v. Todd*, 195 Ark. 134, 111 S. W. 2d 472, and, in harmony with the reasoning in the *Carle* opinion, it was held that the clerk's failure to make the certificate before the day of sale is an irregularity cured by Act 142. A contrary view was expressed, in a paragraph unnecessary to the decision, in *Union Bk. & Tr. Co.* v. *Horne,* 195 Ark. 481, 113 S. W. 2d 1091, but we regard the *Carle* and *Wallace* cases as sound and adhere to them.

The appellants' third ground for attacking the sale presents a point of first impression. The assessment book shows that in three instances the county assessor listed and valued two contiguous forty-acre tracts, under the same ownership, as separate parcels. In each instance the county clerk, in making up the tax book, combined the two forty-acre tracts into one call of eighty acres (such as the E 1/2 NE 1/4 instead of the NE 1/4 NE 1/4 and the SE 1/4 NE 1/4) and extended the taxes against the total assessed value of the eighty acres. In the subsequent proceedings, including the collector's sale, the eighty-acre descriptions were used.

In insisting that this asserted defect is fatal to the sale the appellants rely on a line of cases beginning with *Cocks* v. *Simmons,* 55 Ark. 104, 17 S. W. 594, 29 A. S. R. 28. These cases hold that two or more tracts cannot be sold in a body for the sum of the taxes due upon all. It is clear from the opinions, however, that the taxes were separately extended against the various tracts, and it was the collector who lumped them together in making the sale. We have no precedent involving the present situation, where tracts separately assessed were consolidated on the tax book for the extension of the taxes.

In the peculiar circumstances of this case we cannot say that the clerk's procedure, if it was erroneous at all, was more than an irregularity cured by Act 142. The statute governing the preparation of the tax book

does not contain detailed directions for describing the property; it merely states that each separate tract shall be listed opposite the name of the owner. Ark. Stats. 1947, § 84-801. In this case each pair of forty-acres tracts was assessed in the name of the same owner; so in consolidating the contiguous parcels into one tract the clerk cannot be said to have deviated from the letter of the statute governing the preparation of the tax book.

It might be argued, however, that the clerk should have followed the more detailed directions contained in the statute applicable to the assessment book. But even in this view the clerk's procedure was not demonstrably wrong. The assessment book is made up before the first of January of the year in which the property is to be assessed. Ark. Stats., § 84-402. When the assessment book now in question was prepared the controlling statute was Act 172 of 1929, which provided that not more than forty acres should be entered under one call. That statute was evidently followed in the present instance. But the tax book cannot be prepared until the clerk receives the assessment book from the assessor on or before the third Monday in August. Ark. Stats., § 84-447. When the tax book now in issue was prepared in the latter part of 1931 the statute having to do with the assessment book had been changed by Act 72 of 1931, which eliminates the forty-acre maximum for each tract and provides that the subdivisions of each section, up to a whole section, are to be listed as they belong to different individuals. Ark. Stats., § 84-402. Again it does not appear that the clerk's procedure was contrary to the statute.

In holding that this irregularity, if it amounted to that, was not fatal to the sale we stress the fact that it could not have had any substantial adverse effect upon the rights of the taxpayer. An eighty-acre governmental subdivision can equally well be described as two forties, four twenties, eight tens, and so forth. The total taxes come to the same amount, no matter how the land is subdivided. In this instance the consoli-

dation was actually favorable to the taxpayer, for the costs resulting from the delinquency were eighty cents less than they would have been had the two forties been taxed and sold separately. In these circumstances we think it plain that the variation between the assessment book and the tax book was at most an irregularity falling within the purview of Act 142.

As a fourth ground for attacking the sale the appellants assert that some of the tracts were sold for an excessive amount. The excess, however, was less than a cent and does not invalidate the sale. *Cowling* v. *Muldrow*, 71 Ark. 488, 76 S. W. 424; *Kinney* v. *Duggan*, 199 Ark. 396, 133 S. W. 2d 878.

We conclude that the appellants have failed to establish the invalidity of the tax sale except with respect to the one tract not affected by Act 142 of 1935. As to this tract it is necessary to consider the other grounds advanced by the appellees for affirmance of the decree.

It is first contended that the appellants are not the real parties in interest. Here the theory is that E. H. Coulter was disqualified as a purchaser at the bankruptcy sale, owing to his being the attorney for the trustee, but that he nevertheless purchased the property and had it conveyed through Prothro to his children. Except for inferences to be drawn from the fact that the conveyances were between parties related to one another there is little or no competent proof that Coulter actually furnished the purchase money. In our opinion, however, the appellees' position would not be sound even if sustained by proof; so the evidence need not be weighed.

In the first place, the appellees are not entitled to complain of fraud in a transaction to which they are strangers. If Coulter violated a fiduciary duty by purchasing at the bankruptcy sale, the wrong was to the bankrupt partnership and its creditors. They might have enforced a constructive trust upon the property and would then have been required to refund the pur-

chase money paid by Coulter. *Pharr* v. *Fink,* 151 Ark. 305, 237 S. W. 728; Rest., Restitution, § 192, Comment *i.* But the injured persons have not elected to complain, and the appellees are not in a position to do so. They merely hold a void tax title and come within the rule that in a suit to quiet title a defendant who has no title is not permitted to show that the plaintiff's own deed was obtained from a third person by fraud. *Fuller* v. *Fuller,* 228 Mass. 441, 117 N. E. 838; *Obermeyer* v. *Behn,* 108 N.Y.S. 289, affd. 195 N. Y. 588, 89 N. E. 1106.

Furthermore, the appellants are in fact the real parties in interest. It is clear that E. H. Coulter, having no title to the property, could not maintain the present suit, nor could he assert his own fraud as a basis for recovering the land from his sons. *McClure* v. *McClure,* 220 Ark. 312, 247 S. W. 2d 466. If Coulter was guilty of wrongdoing his own conduct has placed the property irretrievably beyond his reach. This leaves the appellants, who of course were too young to have participated in the asserted misconduct, as the sole holders of the legal title. In New York, whose civil code is the prototype of our own, it is settled that the plaintiff is the real party in interest if he has the legal title and if a recovery or satisfaction by him would protect the defendant against all claims by third persons. *Sheridan* v. *Mayor,* 68 N. Y. 30; *Borgos* v. *Price,* 140 Misc. Rep. 287, 250 N. Y. S. 457. Both conditions of the rule are satisfied in this case.

The appellees also plead the statute of limitations as a defense to the suit. The land is unimproved, and the appellees rely upon the payment of taxes for more than seven years under color of title. Ark. Stats., § 37-102. That statute is not in itself a statute of limitations. It merely creates constructive possession, and it is necessary to apply the general statute of limitations for that possession to ripen into title. *Hubble* v. *Grimes,* 211 Ark. 49, 199 S. W. 2d 313. The general statute contains a saving clause in favor of persons who were minors when the cause of action first accrued. Ark. Stats., § 37-101. The ap-

pellees' constructive possession did not begin until after their purchase from the state in 1937, and since the appellants then owned the land they were entitled to bring the suit within three years after reaching their majority. The complaint was filed well within the time allowed.

Finally, it is contended that the plaintiffs failed to deraign their title to the land, or to prove their ownership in some other manner, and are therefore not entitled to a decree under the holding in *Coulter v. O'Kelly*, 226 Ark. 836, 295 S. W. 2d 753. The decree in this case was rendered before our decision was announced in the *O'Kelly* case, and for the reasons stated in *Griffin v. Isgrig*, 227 Ark. 931, 302 S. W. 2d 777, the appellants will be permitted to offer proof of their title on remand.

Affirmed in part and reversed in part.

## ON REHEARING.

George Rose Smith, J. In a petition for rehearing the appellants contend that with respect to one forty-acre tract the tax sale was for an amount that was excessive by more than a cent. The taxes upon this tract came to $4.3722, which the clerk rounded off as $4.38. When the taxes were not paid the 10% penalty was entered in even figures as 44 cents, making a combined tax and penalty of $4.82. It is now insisted that this charge was fatally excessive, because a tax of $4.3722 plus a penalty of $.43722 would be only $4.80942.

This argument is not sound. The computation of the tax and the computation of the penalty took place several months apart. Under the cases cited in the original opinion it was permissible in each instance for the clerk to round off the fractional amount in even cents, since the difference was less than the smallest coin in our monetary system. Two rights do not make a wrong. It would be manifestly impractical to require the clerk, before entering the penalty in round figures, to recompute the original tax to be certain that the two trivial fractional amounts did not together exceed a penny.

Rehearing denied.